UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

DONALD W. BORDELON                    CIVIL ACTION

VERSUS                                No. 18-2563

WELLS FARGO FINANCIAL                 SECTION I
LOUISIANA, LLC, ET AL.

## ORDER AND REASONS

This case concerns a foreclosure proceeding in state court. *Pro se* plaintiff Donald Bordelon ("Bordelon") alleges that defendants "have been involved in an ongoing enterprising . . . to, through a series of false or misleading statements, foreclose on his immovable property" in Metairie, Louisiana "using false documents filed with the clerk or in court."[1] According to Bordelon, "[t]he conspiracy involves falsely alleging that [he] was in default on a mortgage not secured by [ ] that property . . . and then commencing [a] state court lawsuit [in the 24th Judicial District Court] to foreclose on it when in fact that [n]ote had been paid off."[2]

Before the Court is a motion[3] filed by defendant Herschel Adcock, Jr. ("Adcock") to dismiss certain claims[4] against him pursuant to Federal Rule of Civil Procedure 12(b)(6).[5] Bordelon opposes[6] the motion.

---

[1] R. Doc. No. 27, ¶ 2.
[2] *Id.* ¶ 3.
[3] R. Doc. No. 9. Adcock gave permission for the Court to apply the motion to Bordelon's first amended complaint. *See* R. Doc. No. 26.
[4] In his first amended complaint, Bordelon added a state law fraud claim against Adcock. *See* R. Doc. No. 27, ¶ 4, 50-52. The Court gave Adcock an opportunity to respond to Bordelon's first amended complaint by June 4, 2018 at 12:00 noon, *see* R. Doc. No. 31, but Adcock declined the opportunity. Because Adcock has not moved to dismiss this claim, the Court does not consider the claim's viability at this time.

1

# I.

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a district court may dismiss a complaint, or any part of it, where a plaintiff has not set forth well-pleaded factual allegations that would entitle him to relief. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). A plaintiff's factual allegations must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570)).

---

[5] In addition to Federal Rule of Civil Procedure 12(b)(6), Adcock also invokes Federal Rule of Civil Procedure 12(b)(1). Adcock argues that, assuming that the Court dismisses Bordelon's civil RICO claim against him, the Court should dismiss Bordelon's state law claims against him for lack of jurisdiction. *See* R. Doc. No. 9-1, at 7-9.

Yet even if the Court dismissed Bordelon's RICO claim against Adcock, the remaining defendants in this action have not moved the Court to dismiss Bordelon's federal law claims against them. Unless and until those claims are dismissed, the Court will have original jurisdiction over this action under Title 28, United States Code, § 1331. Further, the Court will have supplemental jurisdiction "over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a); see Arena v. Graybar Elec. Co., 669 F.3d 214, 221 (5th Cir. 2012) ("The principle of pendent jurisdiction is codified in 28 U.S.C. § 1367 and gives the court discretion to exercise jurisdiction over state-law claims when: (1) federal question jurisdiction is proper, and (2) the state-law claims derive from a common nucleus of operative facts."). "Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." 28 U.S.C. § 1367(a).

Thus, Adcock is simply incorrect that the dismissal of Bordelon's RICO claim against him will deprive the Court of jurisdiction over Bordelon's state law claims against him, as the remaining federal claims provide the Court with a basis for exercising supplemental jurisdiction over the state law claims.

[6] R. Doc. No. 30.

A facially plausible claim is one where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. If the well-pleaded factual allegations "do not permit the court to infer more than the mere possibility of misconduct," then "the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration in original).

On a Rule 12(b)(6) motion to dismiss, a court limits its review "to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *see also Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). In assessing the complaint, the Court must accept all well-pleaded factual allegations as true and liberally construe all such allegations in the light most favorable to the plaintiff. *Spivey*, 197 F.3d at 774; *Lowrey v. Tex. A&M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997).

## II.

Adcock challenges Bordelon's civil RICO claim against him, as well as Bordelon's claim against him for intentional infliction of emotional distress. The Court will consider the viability of each of these claims in turn.

### A.

#### i.

Civil claims under the Racketeer Influenced and Corrupt Organizations Act ("RICO") "have three common elements: '(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise.'" *St. Germain v. Howard*, 556 F.3d 261, 263 (5th Cir. 2009) (quoting *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007)). RICO defines "person" to include "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3).

"A pattern of racketeering activity consists of two or more predicate criminal acts that are (1) related and (2) amount to or pose a threat of continued criminal activity." *St. Germain*, 556 F.3d at 263. "The predicate acts can be either state or federal crimes." *Id.*; *see* 18 U.S.C. § 1961(1) (providing an extensive definition of "racketeering activity"). "Predicate acts are 'related' if they have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *In re Burzynski*, 989 F.2d 733, 742 (5th Cir. 1993) (internal quotation marks omitted in part).

"To establish continuity, plaintiffs must prove 'continuity of racketeering activity, or its threat.'" *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 241 (1989)). "This may be shown by either a closed period of repeated conduct, or an open-ended period of conduct that 'by its nature projects into the future with a threat of repetition.'" *Id.* (quoting *H.J. Inc.*, 492 U.S. at 241).

> A closed period of conduct may be demonstrated by proving a series of related predicates extending over a substantial period of time. An open period of conduct involves the establishment of a threat of continued racketeering activity. This may be shown where there exists a specific threat of repetition extending indefinitely into the future, or where it is shown that the predicates are a regular way of conducting defendant's ongoing legitimate business.

*Id.* (internal quotation marks and citations omitted). "[W]here alleged RICO predicate acts are part and parcel of a single, otherwise lawful transaction," however, "[i]t is unnecessary to delve into the arcane concepts of closed-end or open-ended continuity under RICO," because Fifth Circuit precedent illustrates that "a 'pattern of racketeering activity' has not been shown" in such cases. *Id.* at 123 (referencing *In re Burzynski*, 989 F.2d at 733, *Calcasieu Marine National Bank v. Grant*, 943 F.2d 1453 (5th Cir. 1991), and *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241 (5th Cir. 1988)).

With respect to the "enterprise" requirement, RICO defines an "enterprise" to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "An association-in-fact enterprise '(1) must have an existence separate and apart from the pattern of racketeering, (2) must be an ongoing organization and (3) its members must function as a continuing unit as shown by a hierarchical or consensual decision making structure.'" *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 673 (5th Cir. 2015) (quoting *Calcasieu Marine Nat'l Bank*, 943 F.2d at 1461).

"RICO does not require than an enterprise be a separate business-like entity." *Id.* "Instead, an association-in-fact enterprise includes 'a group of persons associated together for a common purpose of engaging in a course of conduct,' and that enterprise can be proved with 'evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit.'" *Id.* (quoting *Boyle v. United States*, 556 U.S. 938, 944-45 (2009)).

The Fifth Circuit has explained that "[t]he linchpin of enterprise status is the continuity or ongoing nature of the association." *Id.* "The enterprise must have continuity of its structure and personnel, which links the defendants, and a common or shared purpose." *Calcasieu Marine Nat'l Bank*, 943 F.2d at 1462. "Thus, two individuals who join together for the commission of one discrete criminal offense have not created an 'association-in-fact' enterprise, even if they commit two predicate acts during the commission of this offense, because their relationship to one another has no continuity." *Montesano v. Seafirst Commercial Corp.*, 818 F.2d 423, 427 (5th Cir. 1987). "However, if the individuals associate together to commit several criminal acts, their relationship gains an ongoing nature, coming within the purview of RICO." *Id.*

### ii.

Adcock argues that, "[e]ven if the allegations in [Bordelon's] complaint are accepted as true, the alleged enterprise will cease to exist once the litigation"—*i.e.*, the foreclosure action—"comes to an end."[7] Further, Adcock argues that, "although

---

[7] R. Doc. No. 9-1, at 5.

6

[Bordelon] may allege a number of predicate acts which occurred during the course of the litigation, these predicate acts do not establish a continuing enterprise where they relate to 'the commission of one discrete criminal offense.'"[8]

Adcock also argues that "the continuity element necessary to establish a 'pattern' of racketeering activity is absent," because "[a]ll of the alleged predicate acts have occurred during the course of a single, otherwise lawful endeavor—a lawsuit aimed at foreclosing and seizing [Bordelon's] immovable property."[9] According to Adcock, "[o]nce that foreclosure is dismissed or complete, the alleged scheme will be over without a threat of it continuing."[10]

For his part, Bordelon points the Court to a nonprecedential Sixth Circuit case, *Slorp v. Lerner, Sampson & Rothfuss*, 587 Fed. App'x 249 (6th Cir. 2014), to support his contention has he has stated a viable civil RICO claim against Adcock in his first amended complaint.[11] He also disputes Adcock's understanding of the case law on which Adcock relies.[12]

---

[8] *Id.* at 5-6 (alteration removed) (quoting *In re Burzynski*, 989 F.2d at 743).
[9] *Id.* at 7.
[10] *Id.*
[11] R. Doc. No. 30, at 6.
[12] *See id.* at 6-11. The Court notes that, in his opposition, Bordelon highlights newspaper reports regarding lawsuits involving Wells Fargo. *See id.* at 9-10. In his view, "[t]he [C]ourt need look no further than the newspaper headlines to find that Wells Fargo as a regular course of business creates false loan documents." *Id.* at 9.

However, Bordelon does not mention these lawsuits in his first amended complaint. *See generally* R. Doc. No. 27. As the Court previously explained, a court presented with a Rule 12(b)(6) motion limits its review "to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V*, 594 F.3d at 387.

**iii.**

Having considered Bordelon's factual allegations and applicable Fifth Circuit case law, the Court concludes that Bordelon's civil RICO claim against Adcock fails, because Bordelon has not alleged that Adcock has engaged in "a pattern of racketeering activity" that is "connected to the acquisition, establishment, conduct, or control of an enterprise." *St. Germain*, 556 F.3d at 263. Bordelon's allegations against Adcock revolve around Adcock's actions as counsel for Bordelon's adversary in an ongoing state court foreclosure proceeding.[13] As Judge Vance thoroughly explained when evaluating the viability of a civil RICO claim in an analogous case, a foreclosure proceeding "is by its nature a one-time resolution of disputed property rights." *Castrillo v. Am. Home Mortg. Servicing, Inc.*, 670 F. Supp. 2d 516, 531 (E.D. La. 2009). Thus, even assuming that Bordelon has in fact alleged two or more predicate acts committed by Adcock, Adcock's "conduct . . . implicates, *at best*, '[p]redicate acts . . . threatening no future criminal conduct.'" *Id.* (quoting *H.J. Inc.*, 492 U.S. at 242) (emphasis added) (alteration in original).

---

Further, even if Bordelon had mentioned these lawsuits in his first amended complaint, "[p]leading the mere existence of lawsuits is not the same as pleading the *facts* that demonstrate predicate illegal acts as the defendant's regular way of doing business." *Word of Faith*, 90 F.3d at 124 (emphasis added). The Court also notes that the filing of a lawsuit against Wells Fargo does not itself establish that Wells Fargo in fact committed a wrong.

[13] *See generally* R. Doc. No. 27, ¶¶ 10-28; *see also* R. Doc. No. 28, ¶ 2 (Bordelon's RICO statement) (contending that Adcock "signed the pleading[s] in the state court action and knew they were untrue").

8

Further, "[i]t is not relevant to the Court's analysis that the state court foreclosure proceeding . . . is ongoing and has not ended." *Id.* (citing *In re Burzynski*, 989 F.2d at 741).

> Although the state court foreclosure proceeding may extend somewhat into the future, it is unlikely to "continue[ ] indefinitely." It is instead likely to be a short-term event, and "[s]hort-term criminal conduct is not the concern of RICO." Moreover, the Court presumes that the [24th Judicial District Court] is capable of detecting and preventing fraudulent foreclosure actions.

*Id.* (internal citations omitted) (alterations in original).

As the Fifth Circuit has noted, "where alleged RICO predicate acts are part and parcel of a single, otherwise lawful transaction, a 'pattern of racketeering activity' has not been shown." *Word of Faith*, 90 F.3d at 123. A state court foreclosure proceeding fits this mold. *See Howell v. Adler*, No. 16-14141, 2017 WL 1064974, at *6 (E.D. La. Mar. 21, 2017) (Africk, J.) ("Further, all of the alleged predicate acts occurred during the course of a single, otherwise lawful endeavor—a lawsuit aimed at seizing and selling Howell's mother's condo unit."); *Castrillo*, 670 F. Supp. 2d at 531 ("Like the litigation in *In re Burzynski*, the allegedly fraudulent debt collection in this case—essentially an eviction proceeding—is a 'single, discrete' transaction." (quoting *Word of Faith*, 90 F.3d at 123)).

The Court need not discuss the distinguishing features of the nonprecedential Sixth Circuit case on which Bordelon relies, as the Fifth Circuit has forged a path for the Court to follow. Because Bordelon "has failed to sufficiently allege a threat that [Adcock] will engage in repeated, long-term criminal activity," Bordelon's civil RICO claim against Adcock must be dismissed. *Id.*; *see also Howell*, 2017 WL

1064974, at *6 ("Simply put, there can be no pattern of racketeering activity where the plaintiff alleges 'conduct that [has] an inherent and definite termination point and [does] not present a future threat of repetition.'" (quoting *Larco Towing, Inc. v. Newpark Drilling Fluids, LLC*, No. 09-2928, 2010 WL 1416550, at *2 (E.D. La. Mar. 31, 2010) (Engelhardt, J.))).

## B.

### i.

To state a claim for intentional infliction of emotional distress under Louisiana law, "a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991).

"Louisiana courts . . . have set a very high threshold on conduct sufficient to sustain an emotional distress claim, and the Louisiana Supreme Court has noted that courts require truly outrageous conduct before allowing a claim even to be presented to a jury." *Perrone v. Rogers*, 234 So. 3d 153, 157 (La. Ct. App. 1st Cir. 2017). "Outrageous conduct is a nebulous concept, as it does not refer to any specific type of conduct and it may even refer to a pattern of conduct." *Id.* "Conduct which is merely tortuous or illegal does not rise to the level of being extreme and outrageous." *Nicholas v. Allstate Ins. Co.*, 765 So. 2d 1017, 1025 (La. 2000). Rather, outrageous conduct is "conduct which is so outrageous in character, and so extreme

10

in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Stevenson v. Lavalco, Inc.*, 669 So. 2d 608, 611 (La. Ct. App. 2d Cir. 1996).

"The distress suffered must be such that no reasonable person could be expected to endure it." *Perrone*, 234 So. 3d at 158. "Liability arises only where the mental suffering or anguish is extreme." *Id.*

> Further, the defendant's knowledge that plaintiff is particularly susceptible to emotional distress is a factor to be considered. But the mere fact that the actor knows that the other will regard the conduct as insulting, or will have his feelings hurt, is not enough. The actor's conduct must be intended or calculated to cause severe emotional distress and not just some lesser degree of fright, humiliation, embarrassment, worry or the like.

*Id.* (internal citation omitted).

### ii.

In his first amended complaint, Bordelon alleges that, as a result of the actions of Adcock and his co-defendants, he "has suffered extreme emotional distress, has lost sleep and appetite and has been fearful of leaving his home lest he return to find it padlocked."[14] Adcock argues that these allegations, "even if true, fail to meet the high threshold for severe emotional distress as required under Louisiana law to sustain a claim for intentional infliction of emotional distress."[15]

---

[14] R. Doc. No. 27, ¶ 28.
[15] R. Doc. No. 9-1, at 10.

11

This is the *only* basis on which he challenges Bordelon's claim for intentional infliction of emotional distress.[16]

The problem for Adcock, however, is that he overlooks the established practice in this circuit that "pro se complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981). When considered from this vantage point, the Court concludes Bordelon's allegations concerning the emotional distress that he has suffered are sufficient to survive a Rule 12(b)(6) motion to dismiss. Considering the limited basis on which Adcock urges dismissal of Bordelon's claim for intentional infliction of emotional distress, the Court will not dismiss such claim at this time.

### III.

Finally, the Court must consider whether to dismiss Bordelon's civil RICO claim against Adcock with or without prejudice. *Pro se* litigants such as Bordelon are "entitled to special accommodation by the judiciary." *Castro Romero v. Becken*, 256 F.3d 349, 353 (5th Cir. 2001). "Generally a district court errs in dismissing a *pro se* complaint for failure to state a claim under Rule 12(b)(6) without giving the plaintiff an opportunity to amend." *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam); *see also Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986) ("Dismissing an action after giving the plaintiff only one opportunity to state his case is ordinarily unjustified.").

---

[16] *See id.* ("For this reason, alone, [Bordelon] fails to state a claim for intentional infliction of emotional distress and his claim [for intentional infliction of emotional distress] should be dismissed.").

12

At some point, however, "a court must decide that a plaintiff has had fair opportunity to make [her] case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit." *Id.*; *cf. Parra v. Coloplast Corp.*, No. 16-14696, 2017 WL 24794, at *5 (E.D. La. Jan. 3, 2017) (Vance, J.) ("Because plaintiffs have already had one opportunity to amend their petition and continue to provide nothing more than conclusory allegations, the petition will be dismissed with prejudice."). For example, if a court concludes that a plaintiff has alleged his "best case," then dismissal with prejudice is appropriate. *Bazrowx*, 136 F.3d at 1054.

With respect to Bordelon's civil RICO claim against Adcock, the Court concludes that Bordelon has alleged his best case. After receiving Adcock's motion to dismiss and thus being made aware of the claim's deficiencies, Bordelon amended his complaint, yet he was unable to successfully address these deficiencies—an unsurprising result, given the event from which Bordelon's case arises and the nature of the deficiencies identified.

As such, the Court will dismiss Bordelon's civil RICO claim against Adcock with prejudice.

**IV.**

Accordingly,

**IT IS ORDERED** that the motion is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Bordelon's civil RICO claim against Adcock is **DISMISSED WITH PREJUDICE**. In all other respects, the motion is **DENIED**.

New Orleans, Louisiana, June 6, 2018.

                                **LANCE M. AFRICK**
                            **UNITED STATES DISTRICT JUDGE**