# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

DONALD W. BORDELON          CIVIL ACTION

VERSUS          No. 18-2563

WELLS FARGO FINANCIAL          SECTION I
LOUISIANA, LLC, ET AL.

## ORDER & REASONS

Before the Court are two motions—a motion[1] to dismiss filed by defendant Wells Fargo Financial Louisiana LLC ("WFFL") and a partial motion[2] to dismiss filed by defendant Wells Fargo Bank, N.A. ("Wells Fargo Bank") (collectively, "the Wells Fargo defendants"). The Wells Fargo defendants move to dismiss *pro se* plaintiff Donald W. Bordelon's ("Bordelon") claims for violation of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), fraud, and intentional infliction of emotional distress pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the motions are granted.

## I.

This case concerns a state court foreclosure proceeding. Bordelon alleges that the defendants[3] "have been involved in an ongoing enterprise . . . to, through a series of false or misleading statements, foreclose on his immovable property" in Metairie,

---

[1] R. Doc. No. 36.
[2] R. Doc. No. 40.
[3] The other named defendant in this case is Herschel Adcock ("Adcock"), the attorney who filed the petition to enforce a note signed by Bordelon on behalf of WFFL. R. Doc. No. 27, at 4; R. Doc. No. 9-1, at 1.

Louisiana "using false documents filed with the clerk or in court."[4] According to Bordelon, "[t]he conspiracy involves falsely alleging that [he] was in default on a mortgage note secured by . . . that property . . . and then commencing [a] state court lawsuit [in the 24th Judicial District Court] to foreclose on it when in fact that Note had been paid off."[5]

In his complaint, Bordelon alleges and it is undisputed that he, his parents, and his then-wife Geraldine signed a note in 2000 ("the 2000 Note").[6] Exhibit A to Bordelon's first amended complaint is a copy of the 2000 Note, marked as "PAID."[7]

On February 16, 2015, Wells Fargo Bank—acting as a loan servicer for WFFL—filed a notice of reinscription on a loan recorded in Jefferson Parish in 2000.[8] According to Bordelon, the notice appears to reference the 2000 Note.[9] One year later, on February 16, 2016, attorney Herschel Adcock filed a petition in state court to enforce a note on behalf of WFFL, naming the four signatories listed on the 2000 Note as the defendants.[10] The petition states that the defendants defaulted on a note "signed by Donald and Geraldine Bordelon on July 7, 2003 'in the original amount of $72,354.40'" ("the 2003 Note") by failing to make payments when they were due.[11]

---

[4] R. Doc. No. 27, at 1.
[5] *Id.* at 2.
[6] *Id.* at 3.
[7] R. Doc. No. 27-1.
[8] *Id.* at 3–4.
[9] *Id.*
[10] *Id.* at 4.
[11] *Id.* at 4–5.

Attached to the petition is a lost note affidavit describing the 2003 Note.[12] However, attached to the lost note affidavit is the 2000 Note—*not* the 2003 Note, despite the substance of the affidavit.[13] WFFL later filed an amended and supplemental petition requesting that "all references to a 2000 promissory note . . . be amended to reflect that the Note was signed in 2003."[14] According to Bordelon, in addition to being sued by the Wells Fargo defendants, he has been receiving demand letters claiming he owes money to an "unidentified lender" "up and through at least April 26, 2018."[15]

Bordelon alleges that "these actions were components in a carefully constructed scheme to deprive him of his home based on a Note which had been paid and which he did not owe."[16] As a result of "this campaign of false mailings . . . and the bogus lawsuit filed in Jefferson Parish Court," Bordelon asserts that he "has suffered pecuniary loss in the depreciation of the value of his home . . . [and] extreme emotional distress."[17]

## II.

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a district court may dismiss a complaint or part of a complaint when a plaintiff fails to set forth well-pleaded factual allegations that "raise a right to relief above the speculative level."

---

[12] *Id.* at 5.
[13] *Id.* at 5.
[14] *Id.* at 7–8.
[15] *Id.* at 6–7.
[16] *Id.* at 11.
[17] *Id.* at 8.

*See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 547)).

A facially plausible claim is one in which "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* If the well-pleaded factual allegations "do not permit the court to infer more than the mere possibility of misconduct," then "the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (alteration in original).

The Court will generally not look beyond the factual allegations in the pleadings to determine whether relief should be granted. *See Hicks v. Lingle*, 370 F. App'x 497, 498 (5th Cir. 2010); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). In assessing the complaint, however, a court must accept all well-pleaded facts as true and liberally construe all factual allegations in the light most favorable to the plaintiff. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999). "Dismissal is appropriate when the complaint 'on its face show[s] a bar to relief.'" *Cutrer v. McMillan*, 308 F. App'x 819, 820 (5th Cir. 2009) (quoting *Clark v. Amoco Prod. Co.*, 794 F.2d 967, 970 (5th Cir. 1986)).

The established practice in this circuit is that *pro se* "complaints are held to less stringent standards than formal pleadings drafted by lawyers." *Miller v. Stanmore*, 636 F.2d 986, 988 (5th Cir. 1981) (citation omitted). In accordance with

this practice, the Court construes Bordelon's pleadings liberally. *Harrison v. HICO, Inc.*, No. 05-2096, 2006 WL 508055, at *2 (E.D. La. Feb. 21, 2006) (Africk, J.) (citing *United States v. Riascos*, 76 F.3d 93, 94 (5th Cir. 1996)).

Bordelon has asserted three claims against WFFL: violation of RICO, fraud, and intentional infliction of emotional distress.[18] Bordelon asserts the same claims against Wells Fargo Bank, in addition to one other claim—violation of the Fair Debt Collection Practices Act ("FDCPA").[19] In their present motions, WFFL and Wells Fargo Bank move to dismiss Bordelon's RICO, fraud, and intentional infliction of emotional distress claims.[20] Although Wells Fargo Bank filed its motion to dismiss after WFFL, the legal arguments in both motions are identical.[21] Hence, the Court will consider them together.

### III.

First, Bordelon asserts that the defendants violated RICO by "falsely dunn[ing] [him] for monies from the year 2000 note which had been paid in full, submitt[ing] false documents . . . and then fil[ing] a foreclosure petition" against him.[22]

Civil RICO claims "have three common elements: '(1) a person who engages in (2) a pattern of racketeering activity, (3) connected to the acquisition, establishment, conduct, or control of an enterprise.'" *St. Germain v. Howard*, 556 F.3d 261, 263 (5th

---

[18] *Id.* at 2.
[19] *See id.* at 12–13.
[20] *See generally* R. Doc. No. 40. Wells Fargo Bank has not moved for dismissal on Bordelon's FDCPA claim. *Id.* at 2.
[21] The arguments in the discussion section of Wells Fargo Bank's motion are word for word the same as what WFFL argues in the discussion section of its motion.
[22] R. Doc. No. 27, at 8.

Cir. 2009) (quoting *Abraham v. Singh*, 480 F.3d 351, 355 (5th Cir. 2007)). RICO defines a "person" to include "any individual or entity capable of holding a legal or beneficial interest in property." 18 U.S.C. § 1961(3).

With respect to the second element, "[a] pattern of racketeering activity consists of two or more predicate criminal acts that are (1) related and (2) amount to or pose a threat of continued criminal activity." *Id.* "The predicate acts can be either state or federal crimes." *Id.*; *see also* 18 U.S.C. § 1961(1) (providing an extensive list of crimes that constitute "racketeering activity"). "Predicate acts are 'related' if they 'have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." *In re Burzynski*, 989 F.2d 733, 742 (5th Cir. 1993) (quoting *H.J. Inc. v. Nw. Bell Tel. Co.*, 492 U.S. 229, 240 (1989)).

To establish the continuity prong of the second element, "plaintiffs must prove 'continuity of racketeering activity, or its threat.'" *Zastrow v. Houston Auto Imports Greenway Ltd.*, 789 F.3d 553, 561 (5th Cir. 2015) (quoting *Word of Faith World Outreach Ctr. Church, Inc. v. Sawyer*, 90 F.3d 118, 122 (5th Cir. 1996)). "This may be shown by either a closed period of repeated conduct, or an open-ended period of conduct that 'by its nature projects into the future with a threat of repetition.'" *Id.* (quoting *H.J. Inc.*, 492 U.S. at 241).

> Continuity over a closed period requires proof of a series of related predicates extending over a substantial period of time. . . . Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement. . . . Continuity over an open period requires a threat of continued racketeering activity. . . . This may be established where the predicate acts themselves involve a

distinct threat of long-term racketeering activity or are part of an ongoing entity's regular way of doing business.

*Id.* (internal quotation marks and citations omitted). "[W]here alleged RICO predicate acts are part and parcel of a single, otherwise lawful transaction," however, "[i]t is unnecessary to delve into the arcane concepts of closed-end or open-ended continuity under RICO" because, according to the Fifth Circuit, "a 'pattern of racketeering activity' has not been shown." *Word of Faith*, 90 F.3d at 123 (referencing *In re Burzynski*, 989 F.2d at 743, *Calcasieu Marine Nat'l Bank v. Grant*, 943 F.2d 1453, 1464 (5th Cir. 1991), and *Delta Truck & Tractor, Inc. v. J.I. Case Co.*, 855 F.2d 241, 244 (5th Cir. 1988)).

Finally, RICO defines an "enterprise" to include "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). "An association-in-fact enterprise '(1) must have an existence separate and apart from the pattern of racketeering, (2) must be an ongoing organization and (3) its members must function as a continuing unit as shown by a hierarchical or consensual decision making structure.'" *Allstate Ins. Co. v. Plambeck*, 802 F.3d 665, 673 (5th Cir. 2015) (quoting *Calcasieu Marine Nat'l Bank*, 943 F.2d at 1461).

"RICO does not require tha[t] an enterprise be a separate business-like entity." *Id.* (citation omitted). "Instead, an association-in-fact enterprise includes 'a group of persons associated together for a common purpose of engaging in a course of conduct,' and that enterprise can be proved with 'evidence of an ongoing organization, formal

or informal, and by evidence that the various associates function as a continuing unit.'" *Id.* (quoting *Boyle v. U.S.*, 556 U.S. 938, 944–45 (2009)).

As the Fifth Circuit has explained, "The linchpin of enterprise status is the continuity or ongoing nature of the association." *Id.* "The enterprise must have continuity of its structure and personnel, which links the defendants, and a common or shared purpose." *Calcasieu Marine Nat'l Bank*, 943 F.2d at 1462. "Thus, two individuals who join together for the commission of one discrete criminal offense have not created an 'association-in-fact' enterprise, even if they commit two predicate acts during the commission of this offense, because their relationship to one another has no continuity." *Montesano v. Seafirst Commercial Corp.*, 818 F.2d 423, 427 (5th Cir. 1987). "However, if the individuals associate together to commit several criminal acts, their relationship gains an ongoing nature, coming within the purview of RICO." *Id.*

In its present motions, the Wells Fargo defendants argue that Bordelon has failed to state a claim under RICO because he has not demonstrated that the defendants were part of an enterprise.[23] Citing the U.S. Supreme Court's decision in *Boyle*, the Wells Fargo defendants assert that Bordelon has not established "that this alleged enterprise is (1) a continuing unit that (2) functions with a common purpose."[24] In addition, they argue that activity occurring over the course of a single lawsuit does not constitute a "pattern of racketeering activity" because that activity is part of a "single lawful endeavor."[25] The Court agrees and concludes that Bordelon's

---

[23] R. Doc. No. 36-1, at 4.
[24] *Id.* at 6 (citing *Boyle*, 556 U.S. at 948).
[25] *Id.* at 10.

civil RICO claims against the Wells Fargo defendants fail because Bordelon has not adequately alleged that the defendants engaged in "a pattern of racketeering activity" that is part of an "enterprise." *St. Germain*, 556 F.3d at 263.

All of Bordelon's allegations involving the Wells Fargo defendants are based solely on their conduct in furtherance of the state court proceeding against Bordelon and others to enforce a note.[26] However, a foreclosure proceeding "is by its nature a one-time resolution of disputed property rights." *See Castrillo v. Am. Home Mortg. Servicing, Inc.*, 670 F. Supp. 2d 516, 531 (E.D. La. Nov. 16, 2009) (Vance, J.). "[W]here alleged RICO predicate acts are part and parcel of a single, otherwise lawful transaction, a 'pattern of racketeering activity' has not been shown." *Word of Faith*, 90 F.3d at 123. A state court foreclosure proceeding fits this mold. *See Howell v. Adler*, No. 16-14141, 2017 WL 1064974, at *6 (E.D. La. Mar. 21, 2017) (Africk, J.) ("Further, all of the alleged predicate acts occurred during the course of a single, otherwise lawful endeavor—a lawsuit aimed at seizing and selling Howell's mother's condo unit.") Furthermore, even assuming that Bordelon has established that the Wells Fargo defendants committed two or more predicate criminal acts,[27] their "conduct . . . implicates, at best, '[p]redicate acts . . . threatening no future criminal conduct.'" *Castrillo*, 670 F. Supp. 2d at 531 (quoting *H.J. Inc.*, 492 U.S. at 242) (alteration in

---

[26] *See* R. Doc. No. 27, at 8–12. The Court acknowledges that Bordelon disputes whether the lawsuit was truly intended to enforce the 2003 Note or the paid 2000 Note; however, this dispute is irrelevant. Regardless of which note the Wells Fargo defendant sought to enforce, Bordelon's allegations rely exclusively on their preparation for and involvement in one lawsuit, which, as stated herein, is insufficient to demonstrate a pattern of racketeering activity under RICO.

[27] The predicate criminal acts Bordelon alleges are mail and wire fraud. *Id.* at 10.

original). Such acts are not sufficient to show continuity, which is required to establish a pattern of racketeering activity. *H.J. Inc.*, 492 U.S. at 242.

"It is not relevant to the Court's analysis that the state court foreclosure proceeding . . . is ongoing and has not ended." *Castrillo*, 670 F. Supp. 2d at 531 (citing *In re Burzynski*, 989 F.2d at 741). "Although the state court foreclosure proceeding may extend somewhat into the future, it is unlikely to 'continue[ ] indefinitely.' It is instead likely to be a short-term event, and '[s]hort-term criminal conduct is not the concern of RICO.'" *Id.* (internal citations omitted) (alterations in original).

Citing a non-precedential Third Circuit case, Bordelon asserts that "RICO is not defined by long term open end continuity [i]f the conduct is sufficiently outrageous."[28] However, well-pleaded RICO claims undoubtedly must include allegations demonstrating continuity, regardless of the "outrageous" nature of the predicate acts. *See, e.g.*, *RJR Nabisco, Inc. v. European Cmty.*, 136 S. Ct. 2090, 2102 n.6 (referring to the "pattern of racketeering activity" element as including a "continuity requirement"); *Malvino v. Delluniversita*, 840 F.3d 223, 231 (5th Cir. 2016) (explaining that, to establish a pattern of racketeering activity, "a plaintiff must show . . . the threat of continuing activity"); *Calcasieu Marine Nat'l Bank*, 943 F.2d at 1461 ("A RICO association in fact enterprise must be shown to have

---

[28] R. Doc. No. 43, at 6 (citing *Kern Packaging v. Fidelcor*, 926 F.2d 1406 (3d Cir. 1991)). While the Court is not bound by the Third Circuit's opinion, Bordelon misreads *Kern*. According to Bordelon, the Third Circuit held "that [the] defendant's deceptive actions in making false mailings ro[s]e to the level of RICO even though they took place over a few months." *Id.* at 6–7. To the contrary, the Third Circuit affirmed the lower court's dismissal of the plaintiff's claims, holding that, "based on the allegations of the complaint . . ., [the plaintiffs] cannot maintain a RICO suit."

continuity.") (citation omitted). Bordelon has not adequately alleged continuity of either racketeering activity or a relationship among the defendants intended to further multiple criminal acts. Consequently, his RICO claims must be dismissed.

## IV.

Bordelon also asserts that the Wells Fargo defendants committed fraud when they 1) filed a notice of reinscription on what he alleges was a "cancelled note" and 2) sent him demand letters for "twice the size of the debt . . . [the] foreclosure petition [says] is actually owed."[29] According to the Wells Fargo defendants, however, Bordelon's fraud claim must be dismissed because he "has not pleaded fraud with particularity."[30] They argue that, because Bordelon's complaint only includes one paragraph alleging facts intended to form the basis of a claim for fraud, he has failed to meet the heightened pleading requirement for fraud claims.[31] The Wells Fargo defendants also argue that Bordelon's fraud claims are barred by Louisiana's one-year prescriptive period for delictual actions.[32]

Bordelon alleges violations of Louisiana Civil Code article 1953, which states that "[f]raud is a misrepresentation or a suppression of the truth made with the

---

[29] R. Doc. No. 27, at 13.
[30] R. Doc. No. 36-1, at 12.
[31] As Bordelon argues in his response, his fraud allegations are not as bare as the Wells Fargo defendants contend: although Bordelon only includes a one-paragraph description of his fraud allegations under that section of his complaint, he incorporates the remainder of the complaint by "repeat[ing] and re-alleg[ing] the allegations set forth" therein. R. Doc. No. 27, at 13. Moreoever, courts "must consider the complaint in its entirety . . . when ruling on Rule 12(b)(6) motions." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).
[32] R. Doc. No. 36-1, at 13.

intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other. Fraud may also result from silence or inaction." La. Civ. Code Ann. art. 1953. To establish fraud pursuant to article 1953, two elements must be met: "(1) an intent to defraud or to gain an unfair [ ]advantage and (2) a resulting loss or damage." *Paulsen v. State Farm Ins. Co.*, No. 06-9546, 2008 WL 417738, at *4 (E.D. La. Feb. 13, 2008) (Africk, J.) (alteration in original) (quoting *Tubos de Acero de Mex., S.A. v. Am. Int'l Inv. Corp.*, 292 F.3d 471, 479 (5th Cir. 2002)).

Federal Rule of Civil Procedure 9 provides a heightened pleading standard for fraud claims. "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b).[33] "To adequately plead fraudulent intent, a plaintiff must allege 'specific facts that support an inference of fraud.'" *Christensen v. WMA Consumer Servs., Inc.*, No. 03-1545, 2003 WL 22174240, at *2 (E.D. La. Sept. 5, 2003) (Barbier, J.) (quoting *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994)).

The Fifth Circuit "interprets Rule 9(b) strictly, requiring the plaintiff to 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" *Flaherty & Crumrine Preferred Income Fund, Inc. v. TXU Corp.*, 565 F.3d 200, 207 (5th Cir. 2009), *cert. denied*, 558 U.S. 873 (2009) (citation omitted). "In other words,

---

[33] "[S]tate law fraud claims are subject to the pleading requirements of Rule 9(b)." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338–39 (5th Cir. 2008).

'the who, what, when and where must be laid out. . . .'" *Culotta v. Sodexo Remote Sites P'ship*, 864 F. Supp. 2d 466, 470 (E.D. La. Mar. 29, 2012) (Africk, J.) (quoting *Williams WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997)).

Bordelon argues that he adequately pleaded fraud with particularity in accordance with Rule 9.[34] He also disputes the argument that his claim is time-barred, asserting that he "only learned of the reinscription when it [a]rose as part of the state foreclosure."[35] According to Bordelon, "[p]rescription begins to run when the plaintiff has actual or constructive knowledge of the alleged tortious act."[36]

Under Louisiana law, "[t]he applicable prescriptive period is determined by the character of the action pled in the petition." *Wells Fargo Fin. La., Inc. v. Galloway*, No. 17-0413, p. 9–10 (La. App. 4 Cir. 11/15/17); 231 So.3d 793, 801 (citation omitted). Analyzing the character of Bordelon's fraud claims, the Court must determine whether they are "contractual in nature, and thus governed by the prescriptive period of ten years for personal actions, or delictual in nature, and thus governed by a one year prescription." *Ames v. Ohle*, No. 11-1540, p. 10 (La. App. 4 Cir. 5/23/12); 97 So.3d 386, 393.

Bordelon and the Wells Fargo defendants had a contractual relationship based on the 2000 Note.[37] However, "even when a tortfeasor and victim are bound by a contract, Louisiana courts usually apply delictual prescription to actions that are

---

[34] R. Doc. No. 43, at 8. Because the Court concludes that Bordelon's fraud claims are prescribed, the Court need not address the alleged lack of specificity in his complaint.
[35] *Id.* at 9 n.2.
[36] *Id.* (citing *Mistich v. Cordis Mgf. Co.*, 607 So.2d 955, 956 (La. Ct. App. 1992)).
[37] R. Doc. No. 27, at 3.

really grounded in tort." *Terrebonne Par. Sch. Bd. v. Mobil Oil Corp.*, 310 F.3d 870, 886–87 (5th Cir. 2002). For the ten-year prescriptive period to apply, Bordelon "has the burden to prove that [the Wells Fargo defendants] breached some contractual duty above and beyond a general duty." *Id.*

Bordelon's fraud claims arise out of events beginning with Wells Fargo Bank's filing of a notice of reinscription. However, Bordelon does not allege that the Wells Fargo defendants breached any contract or contractual provision between them. Therefore, his claims are grounded in tort and "subject to a prescriptive period of one year." *See Trinity Universal Ins. Co. v. Horton*, No. 00-33157, p. 2 (La. App. 2 Cir. 4/5/00); 756 So.2d 637, 638–39 (holding that the delictual prescriptive period applied because the plaintiff did not "allege[ ] that any *specific* contract provision [duty] was breached"); *see also Carriere v. Jackson Hewitt Tax Serv. Inc.*, 750 F. Supp. 2d 694, 704, 706 (E.D. La. 2010) (Vance, J.) (explaining that "the mere existence of a contract between the parties does not indicate that an action is contractual in nature" and applying a one-year prescriptive period, in part because the plaintiff failed to allege that the defendant had breached an existing contract between them).[38]

As a result, even if the Court determined that Bordelon as met Rule 9's heightened pleading standard, Louisiana's one-year prescription for delictual actions

---

[38] In Bordelon's opposition to the present motions, he argues that his claim is not time-barred because "he had no obligation to check the records to see if there had been reinscription" and, thus, he "only learned of reinscription when it [a]rose as part of the state foreclosure." R. Doc. No. 43, at 9 n.2. He then cites a Louisiana tort case, *id.*, which suggests that Bordelon would also characterize his fraud claims as delictual.

14

applies to his fraud claims. In delictual fraud cases, "prescription commences to run from the day injury or damage is sustained." La. Civ. Code Ann. art. 3942.

In the present case, Bordelon alleges that the defendants committed fraud when they filed the notice of reinscription.[39] Although Wells Fargo Bank filed the notice on February 16, 2015, Bordelon argues that the prescriptive period only began to run when he learned about the notice of reinscription via the state foreclosure proceeding.[40] However, according to Bordelon's own timeline, that proceeding began on February 16, 2016 when Adcock filed the petition to enforce the 2003 Note.[41] Although it is unclear exactly when Bordelon was served, he contends that Adcock filed an amended petition on April 26, 2016 in response to his answer.[42] Bordelon therefore admittedly answered the petition before April 26, 2016, and the Court concludes that Bordelon learned of the notice of reinscription sometime between February 16, 2016 and April 26, 2016.

Thus, even accepting Bordelon's assertion that the prescriptive period did not begin to run until he first learned about the notice of reinscription, he had, at the latest, one year from April 26, 2016 to timely file his lawsuit against the defendants. Bordelon did not file this action until March 12, 2018—almost two years later. His fraud claim is therefore prescribed.

---

[39] R. Doc. No. 27, at 13.
[40] *Id.* at 3; R. Doc. No. 43, at 9 n.2.
[41] R. Doc. No. 43, at 3, 8.
[42] R. Doc. No. 1, at 5.

# V.

Bordelon also alleges that the Wells Fargo defendants committed intentional infliction of emotional distress when they "barrage[d] him with threats of foreclosure" and "brought a foreclosure petition based on the paid off 2000 loan."[43] According to Bordelon, as a result of this conduct, he has suffered "extreme emotional distress, has lost sleep and appetite[,] and has been fearful of leaving his home."[44]

"Louisiana courts . . . have set a very high threshold on conduct sufficient to sustain an emotional distress claim." *Perrone v. Rogers*, 17-0509, p. 6 (La. App. 1 Cir. 12/18/17); 234 So. 3d 153, 157. To state a claim for intentional infliction of emotional distress under Louisiana law, "a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *White v. Monsanto Co.*, 585 So. 2d 1205, 1209 (La. 1991); *see also Doss v. Morris*, 86 F. App'x 25, 28 (5th Cir. 2004) ("[T]he tort of intentional infliction of emotional distress occurs when a person 'by extreme and outrageous conduct intentionally causes severe emotional distress to another.'") (citation omitted).

"[C]ourts require truly outrageous conduct before allowing a claim even to be presented to a jury." *Perrone*, p. 6, 234 So. 3d at 157. "Outrageous conduct is a

---

[43] R. Doc. No. 27, at 14.
[44] *Id.* at 8.

nebulous concept, as it does not refer to any specific type of conduct and it may even refer to a pattern of conduct." *Id.* "Conduct which is merely tortuous or illegal does not rise to the level of being extreme and outrageous." *Nicholas v. Allstate Ins. Co.*, 99-2522, p. 10–11 (La. 8/31/00); 765 So. 2d 1017, 1025. Outrageous conduct is that "which is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Stevenson v. Lavalco, Inc.*, 96-28020, p. 3 (La. Ct. App. 2 Cir. 2/28/96); 669 So. 2d 608, 611. "The distress suffered must be such that no reasonable person could be expected to endure it." *Perrone*, p. 7, 234 So. 3d at 158. "Liability arises only where the mental suffering or anguish is extreme." *Id.*

> [T]he mere fact that the actor knows that the other will regard the conduct as insulting, or will have his feelings hurt, is not enough. The actor's conduct must be intended or calculated to cause severe emotional distress and not just some lesser degree of fright, humiliation, embarrassment, worry or the like.

*Id.* (internal citation omitted).

The Wells Fargo defendants argue that neither filing a lawsuit—even maliciously—nor sending Bordelon demand letters meet the standard for outrageous conduct, and the Court agrees.[45] Bordelon's allegations are not sufficient to state a claim for relief regarding his intentional infliction of emotional distress claims.

---

[45] Bordelon contends that the Wells Fargo defendants have been sending him demand letters for more than twice the amount they originally claimed he owes in their state foreclosure lawsuit. R. Doc. No. 43, at 13. In their joint reply, the Wells Fargo defendants argue that Bordelon cannot claim "severe" emotional distress because he "knew that he did not owe [that] amount." R. Doc. No. 48, at 9–10. While the Court ultimately concludes that dismissing Bordelon's intentional infliction of emotional

Other sections of this Court have dismissed lawsuits alleging intentional infliction of emotional distress based on conduct similar to or more egregious than filing a lawsuit and sending demand letters. For example, the Court granted summary judgment in favor of a defendant with respect to the plaintiff's intentional infliction of emotional distress claims in a case in which the plaintiff alleged that the defendant improperly initiated wage garnishment proceedings against him. *Murungi v. Tex. Guaranteed*, 693 F. Supp. 2d 597, 607 (E.D. La. Feb. 18, 2010) (Vance, J.). The plaintiff also alleged that he received "harassing and embarrassing" phone calls from the defendant, yet that was not enough to meet the standard for outrageous conduct. *Id.* ("Although perhaps obnoxious, these actions are not 'so outrageous in character and extreme in degree as to go beyond all possible bounds of decency.'") (citation omitted); *see also Floyd v. Wells Fargo Home Mortg. Co.*, 848 F. Supp. 2d 635, 645 (E.D. La. Jan. 31, 2012) (Barbier, J.) (holding that "a barrage of threatening phone calls at various times of the day throughout the week" was not "of the requisite outrageous character" sufficient to state a claim for intentional infliction of emotional distress).

The Wells Fargo defendants rely on *DirecTV, Inc. v. Atwood*, in which the Court held that allegations of a lawsuit filed to harass the defendant did not "support a claim for intentional infliction of emotional distress under Louisiana law." No. 03-1457, 2003 WL 22765354, at *2 (E.D. La. Nov. 19, 2003) (Engelhardt, J.). The Court

---

distress claims is appropriate, it disagrees that knowledge of an alleged "false demand" necessarily precludes a finding of severe emotional distress.

explained that filing a lawsuit "is an action that is embraced in this and most civilized communities" and that, "regardless of . . . motive . . .[,] the alleged conduct itself simply does not rise to the level of extreme and outrageous." *Id.* Bordelon argues that *DirecTV* is distinguishable because the Wells Fargo defendants' alleged conduct goes beyond merely filing a bad faith lawsuit. He asserts that the Wells Fargo defendants didn't "just file a lawsuit": they "constructed one from whole cloth, preparing a phony reinscription, . . . a perjured 'lost note affidavit,' [and] attached loan papers when they knew the loan had been paid. . . ."[46]

The standard for extreme and outrageous conduct is a "very high threshold." *Perrone*, p. 6, 234 So. 3d at 157. Bordelon's allegations simply do not rise to the level of "atrocious[ ] and utterly intolerable in a civilized community" such that can be considered "outrageous" under the law. *Stevenson*, p. 3; 669 So. 2d at 611. Even accepting the facts in his complaint as true, Bordelon has not pleaded facts that allow the Court to draw the reasonable inference that the Wells Fargo defendants are liable for intentional infliction of emotional distress. *See Iqbal*, 556 U.S. at 678.

## VI.

Finally, the Wells Fargo defendants urge the Court not to allow Bordelon to amend his claims and file a third complaint.[47] They rely on the Fifth Circuit's rule that, while courts should generally "give plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case," a court may decline to permit a

---

[46] R. Doc. No. 43, at 14.
[47] R. Doc. No. 36-1, at 16.

plaintiff to amend "if the defects are incurable or the plaintiffs have already alleged their best case." *Pierce v. Hearne Indep. Sch. Dist.*, 600 F. App'x 194, 200 (5th Cir. 2015). The Wells Fargo defendants contend that Bordelon has alleged his best case because he has already filed an amended complaint as well as a response to the Court's standing RICO order.[48] In response, Bordelon criticizes the Wells Fargo defendants for "manipulating the timing" of their motions to block him from amending his complaint to "fix any pleading errors."[49]

Liberally construing Bordelon's opposition, the Court understands Bordelon's argument to be that the Wells Fargo Bank defendants waited until after he filed his first amended complaint to file their motions to dismiss so that they could raise new arguments and then argue, as they now do, that the Court should refuse to allow Bordelon to amend his complaint further. Bordelon seems to be suggesting that the timing of the motions to dismiss is manipulative because, "unless the court agrees to allow him to make such pleading repair, he is stuck with the [facts] in the First Amended Complaint."[50]

---

[48] *Id.* at 17.

[49] R. Doc. No. 43, at 11.

[50] *Id.* at 12. Bordelon also argues that Wells Fargo Bank's motion to dismiss is untimely. *Id.* at 2. In support of this argument, he contends that the motion "cannot be treated as a motion under FRCP 12 (c)" because the pleadings are not closed. *Id.* at 1–2. However, Wells Fargo Bank did not file its present motion as a motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c), so whether the pleadings are closed is irrelevant.

Furthermore, Wells Fargo Bank's deadline to file a responsive pleading was June 26, 2018, on which date it asserted a Rule 12(b)(6) defense in a motion to dismiss regarding three of Bordelon's four claims. On the same day and immediately after, Wells Fargo Bank also filed an answer responding to the fourth claim. The motion to

When ruling on a Rule 12(b)(6) motion, the Court will typically provide a *pro se* plaintiff the opportunity "to attempt to successfully state a claim in an amended complaint." *Amanduron v. Am. Airlines*, 416 F. App'x 421, 423 (5th Cir. 2011) However, Bordelon has already submitted a response to the Court's standing RICO order, a 15-page amended complaint, a response to Adcock's motion to dismiss, and a response to the Wells Fargo defendants' present motions.

Moreover, the Court permitted Bordelon to respond to the Wells Fargo defendants' motions over a month after the Court ruled on Adcock's motion to dismiss. In that ruling, the Court noted several deficiencies in Bordelon's amended complaint with respect to his RICO claims. Bordelon thus knew that those deficiencies warranted dismissal of his RICO claim against Adcock, yet he made no additional assertions in his response to the Wells Fargo defendants' motion attempting to correct those deficiencies. Bordelon has had ample time to consider the Court's reasons for granting Adcock's motion to dismiss his RICO claim and to allege facts sufficient to avoid dismissal of his remaining RICO claims against the other defendants.

With respect to his fraud and intentional infliction of emotional distress claims, allowing Bordelon to amend his complaint again would be futile, and "[i]t is within the district court's discretion to deny a motion to amend if it is futile." *Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 872–73 (5th Cir. 2000). "[T]o determine futility,

---

dismiss was therefore timely filed in accordance with the Federal Rules of Civil Procedure. Fed. R. Civ. Pro. 12(b) (stating that a defense under 12(b)(6) may be asserted as a motion instead of in a pleading, but the motion "must be made before pleading if a responsive pleading is allowed").

[courts] apply 'the same legal sufficiency as applies under Rule 12(b)(6).'" *Id.* at 873 (citation omitted). Thus, futility requires "that the amended complaint would fail to state a claim upon which relief could be granted." *Id.*

Bordelon's fraud claims are prescribed, so any additional facts Bordelon might allege in a third amended complaint would fail to state a claim for relief because the claims would still be time-barred. Permitting Bordelon to further amend his complaint with respect to his intentional infliction of emotional distress claims would also be futile because, as explained herein, none of the Wells Fargo defendants' alleged conduct rises to the level of outrageousness required to state a claim for relief under Louisiana law.[51]

Bordelon "gives no indication that he did not plead his best case" in the several pleadings he has submitted. *Brewster v. Drake*, 587 F.3d 764, 768 (5th Cir. 2009) (affirming the lower court's dismissal of a *pro se* plaintiff's complaint). The Court therefore concludes that Bordelon has alleged his best case and, to the extent that Bordelon seeks leave to file a second amended complaint, such leave is denied.

## V.

Accordingly,

**IT IS ORDERED** that Wells Fargo Financial Louisiana LLC's motion to

---

[51] Although the Court denied Adcock's motion with respect to Bordelon's intentional infliction of emotional distress claims against him, it did so because Adcock offered a "limited" and insufficient basis for dismissal. R. Doc. No. 35, at 12. The Court did not conclude that Bordelon had sufficiently pleaded a claim for relief, and Bordelon was on notice that his claims were potentially deficient. Bordelon had an opportunity to cure any defects in his response to the present motions and has therefore alleged his best case with respect to those claims.

dismiss is **GRANTED** and that Bordelon's claims against Wells Fargo Financial Louisiana LLC in the above-captioned matter are **DISMISSED WITH PREJUDICE**.

      **IT IS FURTHER ORDERED** that Wells Fargo Bank, N.A.'s partial motion to dismiss is **GRANTED** and that Bordelon's RICO, fraud, and intentional infliction of emotional distress claims against Wells Fargo Bank, N.A. in the above-captioned matter are **DISMISSED WITH PREJUDICE**.

      New Orleans, Louisiana, July 25, 2018.

**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**