UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| DONALD W. BORDELON | CIVIL ACTION |
| VERSUS | No. 18-2563 |
| WELLS FARGO FINANCIAL LOUISIANA LLC, ET AL. | SECTION I |

## ORDER & REASONS

Before the Court is plaintiff Donald Bordelon's ("Bordelon") motion for reconsideration. Bordelon requests that the Court reconsider and reverse its dismissal of Bordelon's fraud claims against defendants Wells Fargo Bank, N.A. ("Wells Fargo Bank") and Wells Fargo Financial Louisiana LLC ("WFFL") (collectively, the "Wells Fargo defendants"). For the following reasons, the motion is denied.

## I.

Reconsideration of interlocutory orders is governed by Federal Rule of Civil Procedure 54(b). *Namer v. Scottsdale Ins. Co.*, 314 F.R.D. 392, 393 (E.D. La. Apr. 5, 2016) (Africk, J.) (citing *McKay v. Novartis Pharm. Corp.*, 751 F.3d 694, 701 (5th Cir. 2014)). Rule 54(b) states that "any order . . . that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Under Rule 54(b), a district court may "reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive

law." *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017) (per curiam) (citing *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 185 (5th Cir. 1990)).

Compared to Rule 59(e) of the Federal Rules of Civil Procedure—which governs motions to alter or amend final judgments—the Fifth Circuit has explained that Rule 54(b)'s standard is "less stringent" and "more flexible." *Id.* at 336–37. For example, unlike in a Rule 59(e) determination, a court conducting a Rule 54(b) inquiry may consider new arguments that could have been previously raised. *See McClendon v. United States*, 892 F.3d 775, 781 (5th Cir. 2018).[1]

When deciding whether to grant a Rule 54(b) motion, courts must "construe the procedural rules with a preference toward resolving the case on the merits" and weigh "the interests of justice." *Id.* at 338. However, courts should exercise their power "sparingly in order to forestall the perpetual reexamination of orders and the resulting burdens and delays," all of which disserve the interests of justice. *Castrillo v. Am. Home Mortg. Servicing Inc.*, No. 09-4369, 2010 WL 1424398, at *3 (E.D. La. Apr. 5, 2010) (Vance, J.).

District courts have generally considered a number of factors when engaging in a Rule 54(b) analysis, including whether the moving party "demonstrates the

---

[1] Both Bordelon and the Wells Fargo defendants contend that Rule 59(e) governs the present motion. R. Doc. No. 50, at 1; R. Doc. No. 52, at 1. However, motions to reconsider interlocutory orders are not properly reviewed under Rule 59(e). *Austin*, 864 F.3d at 336 (holding that the district court erred in applying Rule 59(e) to a motion for reconsideration of an interlocutory order because the court should have applied the "less stringent" Rule 54(b)). The Court will therefore address Bordelon's motion applying the Rule 54(b) inquiry, even though the parties base their arguments on Rule 59(e) standards.

2

motion is necessary to correct manifest errors of law or fact upon which the judgment is based," whether an "intervening change in the controlling law" has occurred, whether the moving party presents the district court with new evidence, and "whether the motion is necessary in order to prevent manifest injustice." *Id.* at *4 (considering Rule 59(e) factors while performing the Rule 54(b) inquiry).[2]

**II.**

In response to Bordelon's amended complaint, the Wells Fargo defendants filed motions to dismiss, in which they argued that Bordelon's fraud claims were prescribed. Bordelon disagreed, asserting that, under Louisiana law, "[p]rescription only begins to run when the plaintiff has actual or constructive knowledge of the alleged tortious act" and that he "only learned of the reinscription when it [a]rose as part of the state foreclosure [proceeding]."[3]

The Court ultimately concluded that the claims were time-barred:

[A]ccording to Bordelon's own timeline, [the state foreclosure] proceeding began on February 16, 2016 when [Herschel] Adcock filed the petition to enforce the 2003 Note. Although it is unclear exactly when Bordelon was served, he contends that Adcock filed an amended petition on April 26, 2016 in response to his answer. Bordelon therefore admittedly answered the petition before April 26, 2016, and the Court concludes that Bordelon learned of the notice of reinscription sometime between February 16, 2016 and April 26, 2016.

Thus, even accepting Bordelon's assertion that the prescriptive period did not begin to run until he first learned about the notice of reinscription, he had, at the latest, one year from April 26, 2016 to timely file his lawsuit against the defendants. Bordelon did not file this

---

[2] Bordelon requests that the Court reconsider its order dismissing his fraud claims against the Wells Fargo defendants to "correct a manifest error of law." R. Doc. No. 50, at 1.
[3] R. Doc. No. 43, at 9.

3

action until March 12, 2018—almost two years later. His fraud claim is therefore prescribed.[4]

Bordelon contends that this holding is legally erroneous. He argues that the foreclosure proceeding "is a very wide window . . . continuing through the current date" and that the Court "arbitrarily decided that the window closed on February 16, 2016 when . . . Adcock filed an amended petition."[5] In a similar vein, Bordelon argues that, "even assuming . . . that [he] knew about the reinscription more than a year before filing the complaint, the actions *continued through* 2018." Furthermore, Bordelon argues that he did not have actual knowledge of the allegedly fraudulent notice of reinscription until April 2017, when a mortgage securitization analyst he had retained to review the records on his property located the note from 2000.[6] It was apparently this audit—conducted over a year after Adcock filed the petition to enforce the note—that alerted Bordelon to the defendants' alleged fraudulent acts. None of Bordelon's new arguments change the Court's ruling.

---

[4] R. Doc. No. 49, at 15. Herschel Adcock is the other named defendant in this case and the attorney who filed the petition to enforce a note on behalf of WFFL.
[5] R. Doc. No. 50, at 2. Bordelon's characterization of the Court's order is incorrect. The Court determined that prescription began to run, at the latest, on April 26, 2016, when Adcock filed the amended petition. As described in the Court's previous order, this determination was based on Bordelon's own representations that: 1) the Wells Fargo defendants committed fraud by filing a notice of reinscription on a note that had allegedly already been paid in full; 2) Bordelon learned about the notice of reinscription when it "[a]rose as part of the state foreclosure [proceedings]"; and 3) Adcock filed the amended petition in state court only after Bordelon had been served. From that information, the Court concluded that Bordelon learned about the notice of reinscription when he was served with the amended petition—hence, sometime before the amended petition was filed. However, even if Bordelon did not have actual knowledge of the alleged fraud at that time, as stated herein, the Court finds that he had constructive knowledge.
[6] *Id.* at 3.

As Bordelon has previously stated, "prescription begins to run when [the] plaintiff has actual or constructive notice of the alleged tortious act." *Mistich v. Cordis Mfg. Co.*, 607 So. 2d 955, 956 (La. Ct. App. 1992). In fact, "[the] prescriptive period will begin to run even if the injured party does not have *actual* knowledge of facts that would entitle him to bring a suit as long as there is *constructive* knowledge of same." *Campo v. Correa*, 01-2707, p. 12 (La. 6/21/02); 828 So. 2d 502, 510 (emphasis added). "Constructive knowledge is whatever notice is enough to excite attention and put the injured party on guard and call for inquiry." *Id.* at p. 12, 510–11. "Such information or knowledge as ought to reasonably put the alleged victim on inquiry is sufficient to start the running of the prescription." *Id.*

Bordelon had, at a minimum, constructive knowledge of the defendants' alleged fraud when he was served with WFFL's amended petition. Although the petition—which sought to enforce a note on Bordelon's property—described a note from 2000, it included a copy of the mortgage and an attached lost note affidavit describing a note from 2003.[7] At that point, he was on notice that something was amiss and, thus, had "sufficient information to incite curiosity . . . or to put a reasonably minded person on guard and call for inquiry." *Griffin v. BSFI W. E & P, Inc.*, No. 00-2122, p. 9 (La. Ct. App. 1 Cir. 2/15/02); 812 So. 2d 726, 734 (citation omitted).

---

[7] R. Doc. No. 27, at 4–5. Bordelon admits that he signed a 2000 note, but he contends that he had no knowledge of a 2003 note related to his property.

5

Furthermore, precisely when prescription begins to run "depends on the reasonableness of a plaintiff's action or inaction." *Jordan v. Employee Transfer Corp.*, 509 So. 2d 420, 423 (La. 1987). Bordelon waited almost a year after learning about the state court foreclosure proceeding to hire someone to review the records on his property.[8] Therefore, regardless of when he became *actually* aware of the alleged fraud, he had constructive knowledge as of April 26, 2016, at which time the prescriptive period began to run. Consequently, the Court's previous holding that Bordelon's fraud claims are time-barred was correct.[9]

### III.

Alternatively, Bordelon argues that—even if prescription began to run when he knew or should have known about the allegedly fraudulent notice of reinscription—the Wells Fargo defendants continued to perpetrate fraud up and until "the 'double demand' of 2018."[10] Bordelon argues that, consequently, the continuing tort doctrine should apply to delay prescription.[11]

---

[8] *Id.* at 5–6.
[9] In support of his argument, Bordelon notes that his fraud claim is based in part on demand letters that Wells Fargo Bank sent him—the last of which he received on April 26, 2018. R. Doc. No. 50, at 2. According to Bordelon, he received a letter on that date stating that "he owed $131,622 to an unidentified lender and [that] the last payment on the loan had been made eight years ago. This sum is $68,482 greater than the $63,140 the defendants are seeking in the state court action." *Id.* However, Bordelon filed the present lawsuit in March 2018. Although he did not assert a fraud claim until he filed his second amended complaint in May 2018, Bordelon cannot now claim that the prescriptive period began to run *after* he filed the lawsuit. Bordelon alleged specific facts in his original complaint demonstrating that he knew or should have known about the alleged fraud when he first filed the lawsuit.
[10] R. Doc. No. 50, at 4.
[11] *Id.* Bordelon did not originally assert the applicability of the continuing tort doctrine. Therefore, the Court has not had the opportunity to consider it until now.

6

The continuing tort doctrine acts as an exception to the one-year prescriptive period. "For the purpose of determining when prescription starts to run, Louisiana distinguishes between injuries resulting from continuous operating causes and those that result from discontinuous operating causes." *Young v. United States*, 727 F.3d 444, 448 (5th Cir. 2013). This distinction has been explained by the Louisiana Supreme Court:

> When the operating cause of the injury is continuous, giving rise to successive damages, prescription begins to run from the day the damage was completed and the owner acquired, or should have acquired, knowledge of the damage. . . . When the operating cause of the injury is discontinuous, there is a multiplicity of causes of action and of corresponding prescriptive periods.

*Hogg v. Chevron USA, Inc.*, No. 09-2632, p. 16 (La. 7/6/10); 45 So. 3d 991, 1003 (citation omitted). "'A continuing tort is occasioned by [continual] unlawful acts, not the continuation of the ill effects of an original wrongful act.' Further, . . . '[t]he continuous conduct contemplated in a continuing tort must be tortious and must be the operating cause of the injury.'" *Id.* (alterations in original) (citation omitted). The conduct must be "continuous on an almost daily basis." *Lizotte v. Leblanc*, 456 F. App'x 511, 512 (5th Cir. 2012).

The Wells Fargo defendants' conduct does not constitute a continuing tort. Bordelon maintains that their alleged fraud has resulted in "pecuniary loss in the depreciation of the value of his home . . . , fees associated with defending the foreclosure action, and . . . extreme emotional distress" related to his fear "of leaving

7

his home lest he return to find it padlocked."[12] However, the "operating cause" of these injuries is the defendants' foreclosure action. *Id.*

Therefore, even if Wells Fargo Bank had not sent Bordelon the letters demanding payment, Bordelon would still be suffering the harms set forth in his amended complaint as a result of the defendants' ongoing attempt to foreclose on his property. *See Williams v. Otis Elevator Co.*, 557 F. App'x 299, 302 (5th Cir. 2014) ("It is the tort that must be continuous, not the repercussions of that tort."). Indeed, the demand letter does not appear to be the operating cause of any harm distinct from the harm Bordelon has allegedly sustained as a result of the foreclosure action.[13]

**IV.**

Rule 54(b) "reflects the district court's inherent power to grant relief from interlocutory orders 'as justice requires.'" *Cabral v. Brennan*, 843 F.3d 763, 766 n.3 (5th Cir. 2017) (citation omitted). "But [Bordelon] fail[s] to identify anything resembling . . . an injustice." *Taylor v. Denka Performance Elastomer LLC*, No. 17-7668, 2018 WL 1010186, at *3–4 (E.D. La. Feb. 22, 2018) (Feldman, J.) (citation omitted). Reconsideration of the Court's order dismissing Bordelon's fraud claims as prescribed is unwarranted.

---

[12] R. Doc. No. 27, at 8.
[13] *See In re Med. Review Panel for Claim of Moses*, No. 00-2643, p. 15 (La. 5/25/01); 788 So. 2d 1173, 1183 ("When a defendant's damage-causing act is completed, the existence of continuing damages to a plaintiff, even progressively worsening damages, does not present successive causes of action accruing because of a continuing tort.").

8

Accordingly,

**IT IS ORDERED** that Bordelon's motion for reconsideration is **DENIED.**

New Orleans, Louisiana, August 27, 2018.

_____
**LANCE M. AFRICK
UNITED STATES DISTRICT JUDGE**